112756, Board of Trustees of the Public School Teachers' Pension and Retirement Fund of Chicago v. Board of Education 112756, Board of Education of the City of Chicago v. Board of Education of the City of Chicago v. Board of Education of the City of Chicago Absolutely. Three primary reasons, John. First of all, the course interpretation goes against the plain language of the statute, the obvious intent. Well, let me back up just a little bit because the course interpretation was influenced by the February 19 letter from the fund. True? It was. And so there is that aspect of it. It isn't simply the statute itself, but the letter and whether or not, how that letter complied with the statute. And so the letter had certain language and that language seemed to comport with the statute and that language was connected to that lower figure. And the court judge says, how else do you interpret a statute other than when you use the language of the statute saying under the funding plan specified in Section 17-129 of the pension code, your contribution is $307,485,000. And that's what they gave you. Well, that's what the court gave, but the letter refers to the $307,000,000 as a net. Now, the statute itself requires the fund to certify a number to the board and that number is an amount that's determined by the actuaries and an amount sufficient to bring the fund to a 90% ratio of assets to liabilities. It's the minimum contribution number. And that, in the actuarial evaluation, was $393,000,000. It's set forth in the letter. The letter reads, the actuary has calculated the total employer required contribution for fiscal year 2010 to be $393,266,000. That's all that. It's not unlike someone saying, just give me the bottom line. And that's what I thought the board was saying, just give me the bottom line. And they read the bottom line to be that $307,000,000 in accordance with the letter that the fund wrote. Well, it would be more favorable to them to read the bottom line. But the required contribution is the total, which is $393,000,000. So how do you connect the Section 17-129 of the pension code to the $307,000,000 that you certified, or at least you indicated that maybe that is the amount that you're certifying in that sentence? The statute required that the fund certify the contribution to bring the fund to a 90% level. Now, the statute does not require the fund to certify estimates of what it believes the state might receive. I mean, the fund might receive from the fund. Well, maybe that's one of the fundamental problems. You have to certify by February 28. The state doesn't tell you what their contribution is going to be until after that date. Precisely. But your certification has to occur as of February 28. And they took that $307,000,000 as your certification. They did. Or they alleged they did. There is an unsupported factual assertion that the court relied upon that the board actually relied upon the $307,000,000 net figure in creating its budget. Now, at summary judgment, the board asserted the reliance argument and the specifics of its budget. Isn't that a risk you take when there are cross motions for summary judgment? There simply is no discovery. Whatever the position they claim they're taking is a position you have to accept on their end. You think you can overcome that position by being persuasive as to what the statute actually requires. I would disagree with that, Your Honor. You're not saying that now there's some sort of material question of fact in dispute to overturn a summary judgment? I argued that to the trial court, and she disagreed. Well, here's the problem. When you file cross motions for summary judgment, you're basically telling the court it's a matter of law, and we don't need any additional information. And you can't, you know, when things are looking bad, say all of a sudden, you know what? We've reconsidered. It's not really a good summary judgment motion. Well, you filed your motion because you believed that there was no need for discovery. And everyone agreed that it was presenting purely a question of law. The fund did not agree when the board filed its summary judgment motion months later that there were no, or the fund contended that there were genuine issues of material fact. So it wasn't technically a cross motion. They were, in essence, separate opposing motions for summary judgment. So what kind of proceeding do you think would occur before the trial judge to resolve these questions that you believe still exist? I believe that it would have been proper for the trial court to disregard unsupported factual assertions. The court can scour the record and not find any evidence that would support these unsupported factual assertions that the board advanced. And you're saying that the board's claim that it relied on the $307 million that it contributed to the fund in setting its own budget, is it really true? I'm not saying it's not true. I'm saying there's no record evidence to support that. It's obvious the board had to rely upon some number. It relied upon either $393 or $307. But that number at summary judgment is a fact. And facts belong in an affidavit. No record evidence can support that assertion. Is there any obligation in the statute that you believe controls the outcome here that the board has to make a showing that it is in fact relying on the figure that you, your office, or your client's office has certified? The number that the fund believes was certified, and the number that was certified is the $393 million. Now, that number is the number that the board is to rely upon in creating its budget. There are contributions that may come in from the state. And to the extent that those contributions come in and are actually received, they operate as a credit against what the board would have to pay. The board doesn't have to necessarily pay anything until the last day of the fiscal year, and usually doesn't. So there's an over a year and four months difference between the time when the certification letter is issued and when the fiscal year closes. There's plenty of opportunity for the board to say, here's $393 million that we have to budget for, and to then go ahead and do its budget. Let me take advantage of your words of plenty of opportunity. Because I thought that this was a good opportunity for the board to say, this plan to make solvent the teacher's pension fund was a 45-year plan. Is there something to that effect in your briefs? There is. All right. And the trial judge said, or believed, I don't know about hoped, maybe that was the word she used, but that whatever shortfall occurs in the fiscal year of 2010, it can be made up in the future. So long as the fund properly certifies the correct amount. And so why isn't that true? Why is this an issue that needs to be resolved here and can't be addressed in the course of future years to make up the $37 million deficiency that you believe exists for fiscal year 2010? There's nothing in the statute that really provides for that. The trial court judge was... But the language I thought of setting the amount is to be based on actuarial tables and other assumptions. Other assumptions would seem to me that other assumptions would include the amount as being sufficient to meet its obligation. And in fact, if the assumption is, if the contribution falls a little short, then that assumption has to be reworked. And in the future, additional amounts will be required to be contributed by the board. Pragmatically, that would make sense. But the fact that a deficiency occurred in this case is due solely to the fact that the board failed to pay the total required amount. And that's not true. It's not true that the board failed to pay the required contribution. But let me ask you, I take it your aim here is to force this court to interpret the statute as you'd like it to be interpreted, as you believe it should have been interpreted. But regardless of how it's interpreted, the application of the statute is entirely in the fund's hands. You can't force the court to interpret the statute as you'd like it to be interpreted. You guys get to certify whatever amount you believe is the correct amount. We do, and we certify that amount. It was $393. Now the statute, Section 129B-5, provides that any contribution by the state to or for the benefit of the fund, including without limitation as referred to under Section 17-127, shall be accredited against any contribution required to be made by the board under the subdivision B. It says that the board gets a credit for contributions by the state. It doesn't say the board gets a credit for estimated contributions that the fund anticipates it will receive from the state, but does not actually receive. What it says is the board gets a credit for any amounts that are actually received by the fund. That would comport with the plain language of the statute. Well, then it would seem to me that the fund itself should issue a letter that comports with the statute and don't throw in unnecessary things that have no application to the duty of either party under the statute. We sometimes learn from 2020 hindsight. That's what is going on now. But, Your Honor, file this under the category of no good deed goes unpunished. Because what happened is the board, I'm sorry, the fund certified the total required contribution of $393 million. And as a courtesy, the fund said, here is what we estimate. Let me ask you, how do you think the board should have taken that courtesy? I mean, what's the board's to do with that courtesy that you're giving them? Reduce the amount that they have to budget? Think, well, maybe in the future we're going to have to pay less? I mean, what's the point of that courtesy? I can't get inside the head of my fund's executive director. Probably because there's a long, ongoing relationship between the fund and the board. And it was done as a courtesy to say, here's what we expect. And historically in the past, we've been receiving these amounts from the state. We expect to get these amounts from the state in the future. And if we do, here's how much the net contribution would be. But the total that you have to budget for is the $393 million. Now, as it turned out, the state appropriated far less money, only 50%. And that is what created the deficiency. The fund fixed that by sending out a second letter in August, which reiterated that the total contribution was still $393 million, but notified the board what the amounts were going to be from the state, and hence a larger bottom net requirement. All right. If you could just wrap up, and then we'll give you time for rebuttal. Yes. Well, I would like to go back to the unsupported factual assertion issue. Well, I'm sorry. I would like to go back to the notion that the courts said there was no judicial relief for the fund because it hoped that there was a remedy somewhere in the statute. And I think the court's words are telling at page 65 of the appendix, beginning of line 12. Don't forget we go back to the de novo review, which means what she says really doesn't play any role in our decision. That's correct. And so I won't waste Your Honor's time, but I would urge Your Honor to read what was said at page 65, beginning of line 11. All right. It's interesting. But there's nothing in the statute in section 129A that the court was relying on that would allow for these deficiencies to be made up in a subsequent year. Section 129A applies strictly to deficiencies that occurred prior to 1997. It's a legislative anomaly. And according to the court's reasoning, there's nothing in the statute that required the board to do anything. And hence, there was no right to injunctive relief. According to the court's reasoning, there's nothing that would require the board to make a payment in a non-discretionary manner. And hence, there's no basis for a mandamus relief. So according to the court's reasoning, the fund cannot require or really do anything to make the board pay the contribution, make up a deficiency, impose a tax levy, or anything like that. The court was hoping to have in place, it hoped, that there was some kind of a scenario where the fund could adjust the numbers for the next year, and then the deficiency would be taken care of. But what would happen, likely, is that if that amount is not paid by the board and the deficiency persists, according to the court's reasoning, the fund can't do anything except try to make an adjustment for the year after that. And if the board doesn't pay, the deficiency gets bigger. Your Honor gets the picture. All it does, the so-called remedy that the court envisioned is no remedy at all, and it only creates the potential for a perpetual and ever-increasing shortfall. Except there is a remedy. But the remedy doesn't lie with the courts. It lies with the legislature in Springfield. If the timetable they've set for you, certified by February 28, and they don't provide you with the information as far as their contribution is by that date, then the legislature should make allowances to say that you need only certify the gross amount and wait until we specify what our contribution is, and then you could reduce that amount. But it did in other words. But the words that it used was an amount sufficient in the amount to meet the minimum contribution requirement. That is, sufficient in the amount to bring the fund to the 90 percent level. And that number was $393 million. It's in the actuarial valuation. It's in the letter that the fund sent. But I think the court was concerned with meddling too much in these relationships between two bodies. Politics, as described in your brief, because once you delve into politics, that's why we have a legislature. I can't comment on what the court's concern was, but I think the court improperly interpreted the statute. And when you have a situation where what the court did is the court interpreted the statute essentially to allow the board to pay less than the amount required to meet the minimum funding contribution for the fiscal year 2010. All right, sir.  If you wouldn't mind just coming back for rebuttal. Sit down, come back. Yes, please. Thank you. Good morning, Justices Garcia, Palmer, and Lambton. My name is Lisa Hugie. I'm an assistant general counsel for the Board of Education. May it please the court. Your Honor, and also good morning, Mr. Leatham. Your Honor, your Honors, when Mr. Leatham was before you, he kept talking about the total required contribution. And that figure is $393 million approximately. Why don't we acknowledge at least that if that figure is correct, and you really don't dispute that that's really the figure. You don't dispute that the $307 million was arrived at based on certain assumptions, certain estimates that turned out to be inaccurate. And really the board, if everything had been done properly, if all the calculations had been up front or they had that information prior to February 19 when they issued the letter, that the board would be owing another $37 million and some $100,000, right? Yes. You can see that, right? Absolutely. And so how is that money to be made up if you really owe that money now and it's just a matter of the language in the letter of February 19th that you say allows you to postpone making that contribution. Is the board eventually going to make up that money? Well, I think Your Honor actually already answered that question in discussion. Well, I'm quite curious. But I will give you an answer also, which is Section 129, specifically 129B. Section 17-129 provides that every year the fund is supposed to, by using actuarial methods, estimate the amount that will bring up the fund's total asset to liability up to 90% by the year as of the filing of, when this was in the trial court it was 2045, it's now 2059. But in any event, so the point is... And if this case stands it might be 2065? Well, I think that that's a point that the legislature is recognizing that it is incrementally, you know, they're looking at the budget for the parties and they're looking at the fact that, yes, this will be made up, assuming that the stock market doesn't do better in one year. And the fact is every year the fund is to look at their liabilities as a whole. And the liabilities from the previous year would be factored into that. So how do we get to the position that your board claims that, in fact, it was a lower amount that was certified under the statute? Well, because the statute language says, specifically, they're asking the fund to certify to the Board of Education the amount of the required Board of Education contribution. That's not the total contribution. The total contribution, which is set out at page 11 of the actuarial report, which is in tab B of the board's brief, that sets out, the total contribution sets out the state's contributions pursuant to Section 17-127, the Board of Education's required contribution pursuant to 17-129C, the section we're talking about today, and the Board of Education's contributions pursuant to a whole other section of the code, which is 127.2. All right. This isn't the first year that this sort of information was conveyed by the fund to the board. It's happened numerous times, numerous years in the past. And it's also probably accurate to say that the funding has relied on estimates in the past, and maybe the estimates have been accurate in the past, and they weren't accurate this time because of the budget problems in Springfield, but the board is aware that estimates have been used. And so why, and so that this is the first time the estimates have fallen drastically short, why shouldn't the board say, our practice has always been to rely on estimates, and we rely on those estimates, they relied on those estimates, but this time the estimates turned out to be wrong, and we're going to accept your letter of August 19 saying that we should have contributed more. Because the pension code doesn't allow them to do that, to amend their February 19th contribution requirement. That only applies if, in fact, the amount that you believe was certified is the 307 million, or whatever that amount is. And, in fact, if the board could have been persuaded to say, you know, we now understand that the correct certified amount was 393, lowered by the actual contributions made by the state, and those were relied on by estimates, and now it's a higher figure. I mean, the board could have done that, and nobody's talking about amending it. But the board is not required to pay that amount. The board is required to pay the Board of Education required amount, not the total amount. And the total amount is derived by the fund itself based on their actuary, which the pension code requires them to use an actuary for this very reason. You just triggered a question, and that is, are they required to pay that amount, or are they required to take into consideration that amount in setting their own budget? And the amount doesn't really stay fixed. It is simply something that the board is entitled to rely on in setting its own budget. And if it had set its own budget on 393, it would have the funds available to make up the shortfall from the contribution from the state. And why isn't that a reasonable interpretation of the statute? Because the Board of Education reasonably relied on the language of the statute, which says you have to certify to us the Board of Education's required contribution. You had to know that $307 million was not a fixed amount. Because it was reached by using estimates, and estimates are by their very nature estimates. They're subject to change. So you know that $307 million was not a fixed amount. It wasn't a certified amount in that sense. Nothing is absolutely certain. Every year there could be different changes in the asset valuation. The Board of Education from one year may have to lay off a certain amount of teachers, or their teachers go on strike. Everything is a moving target. Well, doesn't that kind of make the point, though? I mean, the fact that you just said that everything is fluid, doesn't that make the point that the bold statement, we reasonably relied, maybe isn't as solid as you might think it is. Because you know when you get that number that the top number is 393, and you know that the way the statute is designed is that your contribution is only going to be that number minus the other contributions that come in. And since you know that that's a fluid number, how can you say you reasonably relied on the 307 number? Because we have to rely on what the actuary takes into account. And the actuary has to take into account the possibility that the state won't come up with the amount of money that the state has told the fund, which the fund has then told the Board of Education that they will pay. We have to be able to rely on what an actuary comes up with based on actuarial tables. And by the way, council has kept referring to facts that weren't in the record, but one of the facts that the board said that they had to rely on in order to be able to create their own budget for the next year is teacher salaries. And that is a fact in the record, that there was an estimated basically $1 billion that's in the actuarial report. I know it doesn't matter because you're all, your honors, you just have to stand over. Is it in the record somewhere? It is. It's in the... That the board relied on this 307 number in drafting its budget. I think that's what council's point was. That that's not an evidentiary fact in the record. Correct. It's just... And do you think that, what's the import of that? Because they claim that that raises a material issue of fact. I don't agree with that. Why not? Because we have to, because it's just common sense, you have to be able to rely on the amount of the required employer contribution in order to create the Board of Education's own budget. So what about making it up? It can be made up in the future? No, it can't. Assuming that the fund then takes that $37 million from this particular fiscal year and factors that in as a liability into the following fiscal year. Because that liability... Just as it has other liabilities, just as at least the 10% is a liability when it's only, when the goal is to fund the pension by 90%. Right. Well, once it gets up to 90%, then I think that the requirements stop. All right. Well, how would you suggest? I'm going to ask you to be the lawyer for the Board of Trustees. How would you suggest that they could have avoided this problem? How could they have protected themselves from this, knowing that that could very well, especially in these times, that number coming from the state could be a fluid number? Perhaps if I were another actuary, you could make a better estimation. I would suggest to send out the letter that says you owe $390-something thousand dollars. But the problem with that, Your Honor, would be that that would be... I don't mean for you. I know, but I want to nip something in the bud before we start seeing that down the line. So let me get this right. You're saying you don't want that sort of letter because then you'd have to calculate that amount into your budget, and that might cause you to make cuts that you otherwise wouldn't have to make cuts. So it seems to me that in the one hand, you're saying we don't want that letter. On the other hand, you're saying, well, we want to rely on the lower number, and it seems to be you want your cake and eat it too. I do because my cake is the $307 million figure, which is based on what the statute requires. But you've already acknowledged that the $307 million is not the accurate amount, had the statute been followed in accordance with what they're obligated to do, which is certify the amount that you're actually going to have to pay. No, I'm sorry. If I have said that that $307 million is not the correct number, I did not mean that. Well, I mean it in the sense that we all acknowledge that given the contribution by the state, $307 isn't what has to be made up by the parties here in Cook County. It's $37 million more because the state didn't come through fully on its end. So there is that deficiency. You acknowledge that there is a deficiency. Yes, I acknowledge there's a deficiency, but I acknowledge I also state that that deficiency is supposed to be made up in the following fiscal year, which the pension code allows for. The pension code does not allow them. It's like a credit. You want that credit, and you can pay it off gradually. I want to pay what the pension code requires us to pay, which is not the total employer-required contribution. It is the Board of Education-required contribution. Let's get back to Justice Palmer's question and Justice Lampkin's contribution. How could they have done a better job in this case, given that the certification has to be issued by February 28th, and no one knows what the actual amount the state is going to contribute? How can they give you the information you say you want to rely on by February 28th? Because that's what the statute requires, and that's what the legislature has decided is necessary. Well, then it goes to Justice Palmer's question. Are you really relying on that figure? Yes, we are, because that was an actuarial-figured employer-required contribution. Okay. How can they fix it? Like I said, perhaps get a better actuary who can predict the future, but I don't think anyone can do that. Well, it's not the actuarialist. It was the actuarialist. Well, he relied on what the state thought that they would be able to provide. And how could he have done a different job regarding that? I don't know. He can only rely on what they tell him. Just as we, the Board of Education, can only rely on what we're told. All right. Okay. Thank you very much. Thank you, Your Honors. Counsel? I'm sorry, I didn't get your name. It's William Lee. Okay. Thank you. Very briefly, I'll be brief, just a couple of points. So why don't we ask you that question? Now with hindsight, what sort of letter are you going to issue next time around? Or you should have issued this time around. The type of letter. Can you have issued a letter that doesn't impose too great of a burden on them, which is they don't want that $393 million being certified because then that would impact their budget or something, and it really isn't an accurate figure. But you're saying $307 million isn't an accurate figure either. So how do you correct it? We correct it the exact way that Judge Lamkin suggested. And that's exactly what we've done. After this lawsuit, for the next fiscal year, the funds sent out a letter that said, the actuary has calculated the total employer contribution amount to be X. No niceties about what the state might contribute, what the bottom half would be. If these amounts came in, we cut straight to the heart. So the courtesies are gone. The courtesies are gone. That's what happens from lawsuits, right? It does. It's unfortunate, but we need to make clear that the total employer contribution is what it is. In response to one statement that the opposing counsel made, she said nothing is absolutely certain. There is something that's absolutely certain. What's absolutely certain is the amount of the total employer contribution is $393 million. That's the number that applies here. And the board gets a credit only for contributions that are actually received by the state. So is there a history in terms of when that contribution is actually made by the state? By the state. Is it after February 28th, before the fiscal year begins? It is after the February letter was made in the prior fiscal year. Right, 2009 and fiscal year is 2010. So when the letter comes out from the fund certifying the amount, that is in February of that year. It is not until July, I believe, that the legislature makes its appropriations for the coming fiscal year. And then after that is done, the payments start coming in. And historically, the board has made its final payment on the last day or thereabouts of the fiscal year. And just so it's clear, there's no real dispute that the deficiency will be made up at some point? I think there is. There is? Well, we can hope that it is. But that's not the procedure that is required here. I mean, nobody can wipe it off the books, right? So it's going to exist. A deficiency exists, existed into 2010. And the question is, how do you rectify it? It sounds like, just reading this, that it's starting in 2014 that the deficiency could be eaten up. Because there is a set amount for 2011, I think, and 2012, maybe 2013, and then 2014. For three years. Yes. Okay. What the statute contemplates is very simple. Two things. Two-step procedure. The fund certifies the amount the employer required contribution, and the board pays it. There's nothing in the statute that would even contemplate that the board can pay less and these deficiencies can carry over ad nauseum until God knows when in the future. Mr. Leatham, I'm going to have to ask you to wrap up. Your rebuttal. In closing, then, I think I've addressed all the trial court's points of errors, although we only touched briefly on the court's reasoning for injunctive or the failure to allow injunctive release. But you've addressed all of those in your briefs. We did. In that case, I would ask your honors to enter the relief that I requested in my brief, so I will not repeat it, and I thank the court for its time. All right. Well, we thank both counsel, and the case will be taken under advisement. We're going to take a five-minute short break. Thank you.